UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

DANIEL MOYLE,                    *    Case No. 24-CV-3874(CBA)
                                 *
            Plaintiff,           *    Brooklyn, New York
                                 *    September 4, 2025
     v.                          *
                                 *
                                 *
UNITED PARCEL SERVICE, INC.,     *
                                 *
            Defendant.           *
                                 *
* * * * * * * * * * * * * * * *

         TRANSCRIPT OF CIVIL CAUSE FOR ORAL ARGUMENT
            BEFORE THE HONORABLE CLAY H. KAMINSKY
             UNITED STATES MAGISTRATE JUDGE

APPEARANCES:

For the Plaintiff:              TYRONE A. BLACKBURN, ESQ.
                                T.A. Blackburn Law, PLLC
                                1242 E. 80th Street, 3rd Floor
                                Brooklyn, NY 11236

For the Defendant:              LESLIE ANN LAJEWSKI, ESQ.
                                Ogletree, Deakins, Nash,
                                 Smoak & Stewart, P.C.
                                10 Madison Avenue, Suite 400
                                Morristown, NJ 07960

Proceedings recorded by electronic sound recording, transcript
produced by transcription service.

**Fiore Reporting and Transcription Service, Inc.**
**Shelton, CT 06484 (203)732-6461**

2

(Proceedings commenced at 11:23 a.m.)

THE CLERK:  This is a civil cause for oral argument, docket no.  24-CV-3874, Moyle v. United Parcel Service, Inc.

Can the parties please state their appearance, starting with the plaintiff.

MR. BLACKBURN:  Good morning, Your Honor.  Tyrone Blackburn for plaintiff.

THE COURT:  Good morning.

MS. LAJEWSKI:  Good morning, Your Honor.  Leslie Lajewski, of Ogletree, Deakins, for UPS, the defendant.

THE COURT:  Okay.  And Mr. Blackburn, was Mr. Moyle informed of his right to be -- participate today?

MR. BLACKBURN:   He has to work.  So it was going to be difficult for him to get off for 11:00. And he was like I really hope they don't make me.  So I told him what the offer was and he said he would rather just have me report back to him after this morning.

THE COURT:  Okay.  So you informed him he could participate by phone and he waived his appearance.

MR. BLACKBURN:  Yeah.

THE COURT:  Okay.  So I'll accept his waiver.

MR. BLACKBURN:  No problem.

THE COURT:  All right.

Ms. Lajewski, it's your motion.

3

MS. LAJEWSKI:  Yes, Your Honor.  I want to give a little background history, if I may, with respect to how UPS got to this point.

The plaintiffs, including Mr. Moyle, had filed a class action suit in 2020.  And after a long winded litigation of it, it was dismissed on October 26th of 2023, which then meant that they had six months under the New York CPLR 205(a) to refile and serve UPS.

They did file various lawsuits, including this one, several single plaintiffs, as well as another class action, at the end of January of 2021.

But what they did not do is serve any of those lawsuits until May 2 or later, which was past the six months allowed for the tolling of the statute of limitations.

So because of that UPS filed various motions to dismiss.  First, it removed four of the cases to federal court because there was diversity, full diversity, for it, as well as CAFA jurisdiction.

Then they filed, in the federal court cases, including Mr. Moyles' individual case, the pre-motion letters that is required by the various judges, placing the court and the plaintiffs on notice as to why UPS felt that the cases should be dismissed, that they were barred by the statute of limitations because plaintiff failed meet the requirements of CPLR 205(a).

4

UPS provided lengthy citation to legal authority for this. The courts granted UPS's request to file the motion to dismiss, including this one, and they did in all of the -- one, two, three, four, five six, seven cases.

So as time progressed, the first case that came up on this motion to dismiss, the same grounds as Mr. Moyles, was the *Murray* case in New York State court. And that motion was granted on September 12, 2025.

Then after that, in March of 2025 -- March 5, a second case was dismissed here in the federal court by Judge Donnelly. That was the *Welsh vs. UPS* case.

And Judge Donnelly wrote a very lengthy opinion explaining how the plaintiff had missed the six month timeline to both file and serve and, therefore, as a matter of law, the complaint could not stand.

Once we received that decision, we notified plaintiff's counsel that all of the various plaintiffs in Mr. Moyle's case, the class action case, other single plaintiff cases, should voluntarily withdraw the cases because they were obviously not being pursued in good faith now that we have this order explaining the law.

THE COURT: And let me stop you there. Was that your March 11th email?

MS. LAJEWSKI: Yes, it was. And then I had a very lengthy conversation with plaintiff's counsel on March 17,

during which point we explained that if UPS continued to have to pursue these motions to dismiss, that they were going to seek sanctions, both sanctions under the CPLR and the New York State regulations, as well as in federal court.

And plaintiff's counsel responded that while -- and I think -- I'm quoting from my notes here  -- he was not trying to give UPS a hard time, or make this more difficult for the company, but that the simple fact was he could not agree to dismiss any of these cases, including Mr. Moyle's.

And when asked for the explanation why the explanation was that plaintiff's counsel was filing an independent lawsuit against the process server on the basis that he believed the process server had defrauded him by not serving these timely.

I explained to plaintiff's counsel that while I appreciated him pursuing that, that that in no way impacted the fact that he did not have a valid basis legally to continue these cases.

And the response was that he hoped that UPS will not serve a sanctions letter on him, but if it does, he will still not be able to withdraw the cases because he cannot undermine the lawsuit against the process server.

Our position, Your Honor, is from that point on plaintiff and their counsel -- all these plaintiffs, Mr. Moyle and his counsel, were fully aware of the basis that UPS was

seeking sanctions.

He had all of the case law that supported the reason for it in all of these different motions to dismiss, as well as Judge Donnelly's written decision.

THE COURT:  All right, let me stop you there.

MS. LAJEWSKI: Sure.

THE COURT:  So is it your -- so what is the date, in your view, upon which -- on which plaintiff's counsel's conduct became sanctionable?

MS. LAJEWSKI:  My opinion is once you receive the March 5, 2025 decision from Judge Donnelly, but if not that, then definitely on March 17, when we had our very lengthy conversation and he informed me that no matter what -- no matter what UPS served on them or sent him, he would not be withdrawing these cases, Mr. Moyle's case, because it might impact this other independent case he has filed.

THE COURT:  All right.  And the motion to dismiss in this case was already fully briefed by March 5th?

MS. LAJEWSKI:  It was.  And during that conversation that I had with plaintiff's counsel on the 17th, I explained that I wanted to send these other decisions, the one from the *Welsh* case, as well as the *Murray* case, to the various judges, including Judge Amon in this case, and explain that we were going to be seeking sanctions if they didn't withdraw it.

And his response was that he would not object to us

7

doing that and he understood what we had to do.  So I did file that letter, and I sent that letter to --

THE COURT:  It's the June 12th letter.

MS. LAJEWSKI:  Yes.  Thank you.  Explaining that we going to seek sanction, explaining and attaching these other letters.

And again, in response to that, plaintiff's counsel filed no opposition, didn't contact me, didn't object to anything.

The truth is plaintiff's counsel knew fully well the basis for this motion and knew all of the legal authority supporting it, knew UPS was filing it, and had, in my opinion, ample opportunity to withdraw any of these complaints, including Mr. Moyle's.

THE COURT:  Okay. Let's look at Rule 11.

As has been -- as has been talked about in the papers, including Mr. Moyle's surreply yesterday -- and I am going to accept Mr. Moyle's surreply.

And if you want to respond in writing to it or orally -- it discusses some of the cases that were cited in your reply.  So I'm going to accept the surreply and I'll give you an opportunity to respond to it in a moment.

But before we get to that, let's just look at Rule 11.  So there's been a lot of discussion of the safe harbor provision in Rule 11(c)(2), and so I have some questions about

that.

Did UPS comply with the safe harbor provision of 11(c)(2)?

MS. LAJEWSKI: UPS's position is that it did comply by providing the notice and having the conversations, and that it was unnecessary to actually send a formal notice of motion because it would have done nothing, given the plaintiff's counsel's representation, that even if we sent him something, he was still not going to withdraw these cases because of his other pending lawsuit.

THE COURT: Well, those are two separate questions, right?

So one question is whether UPS complied, and the second question is whether if it didn't comply, you know, that mattered, or whether plaintiff's counsel would have taken the same course of action if UPS did comply.

So what's your best argument that UPS did comply?

MS. LAJEWSKI: I cannot tell you that UPS sent him a notice of motion, Your Honor. They didn't. We did not.

We thought it was futile, to be honest with you, so we did not, to the letter of Rule 11. If it says send the motion, motion we did not.

We believe though under the case law, that it was not necessary to do that, given the other clear communications that we had had, making both the point of our legal basis for

this, what we were doing, and giving ample opportunity, in fact, months, to withdraw these cases.

THE COURT:  What is your best case for the proposition that you didn't need to comply with the letter of Rule 11(c)(2)?

MS. LAJEWSKI:  UPS's position is the best case is the fact that plaintiff's counsel informed us that whether we sent him a letter or did anything, he still was not withdrawing any of this.

THE COURT:  Again, that is  -- so -- I see.

What is your best legal authority for the proposition that you didn't need to comply?

MS. LAJEWSKI:  Give me a moment to look at these cases that we had cited in our reply brief to you, Your Honor, where various courts have discussed the fact that where defense counsel have sent letters that fully discuss the merits of the action, and then the plaintiff, under no uncertain terms does not withdraw, that that is sufficient compliance with providing them with a safe harbor to withdraw. And I can cite those cases for you.

THE COURT:  I think I have them top of my mind.  Two of them, *Jeffries* and I'm forgetting the name of it.

MS. LAJEWSKI:   There's *Jeffries* and --

THE COURT:  Montanez.   *Jeffries* and *Montanez* don't actually impose sanctions.  The third one does, but it was a

long and detailed letter.

And, you know, I think what you're saying is that you told him orally on March 17th. But, you know, your March -- is it March 3rd email?

MS. LAJEWSKI: March 11th?

THE COURT: Your March 11th email. Thank you. Doesn't mention sanctions, right?

MS. LAJEWSKI: If I could look at it. Give me a second.

(Pause.)

You are correct. It says I would like to talk to you about the other identical pending motions and whether plaintiff will voluntarily dismiss their claims.

THE COURT: Okay. And your May 19th -- sorry, do I have the date?

MS. LAJEWSKI: 17th?

MR. BLACKBURN: May 29th.

MS. LAJEWSKI: Oh, May 29th.

THE COURT: May 29th. Thank you.

Your May 29th email does mention sanctions. Doesn't cite Rule 11. It mentions sanctions. It's pretty brief.

And then the first time you seem to cite Rule 11 is in your June 12th letter to the court, which, of course, is not a separate motion, right?

MS. LAJEWSKI: Correct.

11

THE COURT:  So I think -- I mean, do you concede that you didn't comply with Rule 11(c)(2)?

MS. LAJEWSKI:  I concede that we did not send the notice of motion.  I do not concede that we did not comply with the spirit of what is required under the case law under Rule 11, Your Honor.

THE COURT:  Okay.  You know, this -- this reference to the spirit of Rule 11 is kind of interesting in this case because I think your adversary, you know, took the position, which was a losing position, that he complied with the spirit of Rule 225, right?  He filed it on time.  He  --  CPLR 225. He filed it on time.  He, I think, emailed it to you within the six months.

MS. LAJEWSKI:  Some of them.  Not all of them.

THE COURT:   Okay.

MS. LAJEWSKI:  You know, it was the same claim that had previously been dismissed so UPS is on notice.

So, you know, there have been a lot of -- there have been a lot of references to the spirit of different rules in this case, but not a lot of compliance with the letter of the rules.

MS. LAJEWSKI:  And if may, Your Honor, I absolutely do not believe that plaintiff or plaintiff's counsel before the Judge Donnelly decision did not think that maybe they could have some kind of argument to change this law.

12

But our position -- UPS' position is after the first dismissal in state court and after the second dismissal in federal court, it became clear that what they were maybe thinking, or hoping to argue, was not going to save the cases.

THE COURT:  Now, of course, Judge Donnelly's decision didn't bind Judge Amon in this case, right?

MS. LAJEWSKI:  Of course not.

THE COURT:  Moving up in Rule 11, can we look at Rule 11(b)?  Which subsection of Rule 11(b) are you invoking?

MS. LAJEWSKI:  I've got to find it again.

(Pause.)

It is Section 2, the little Section 2.  The claims defenses or other legal contentions are warranted by existing law or by a non-frivolous argument for extending, modifying or reversing existing law or for establishing new law.

Our position is certainly after receipt of the *Welsh* decision by Judge Donnelly, plaintiffs and plaintiff's counsel should have known that there was no non-frivolous argument to make to modify or reverse the existing law.

THE COURT:  Okay.  And if I do find that sanctions are appropriate, and I recommend that to Judge Amon what sanction does UPS seek?

MS. LAJEWSKI:  In speaking with UPS, UPS felt that it would be -- it's the discretion of the court. The goal is

13

to try to prevent the plaintiff and plaintiff's counsel from continuing to file these types of lawsuits against UPS when it's out of time.

I can tell you yesterday plaintiffs filed another class action on all of the same grounds in state court, which has not been served yet, claiming that it complies with Rule 205(a), which we disagree with, which we will be moving to dismiss again.

So whatever the court would feel is reasonable to try to prevent this kind of behavior in the future.

THE COURT:  Thank you.  And I misspoke earlier when I said 225 --  205(a).

MS. LAJEWSKI:  205.  Sorry.  Yes.

THE COURT:  Thank you.  All right.

I'll give you another opportunity to speak after plaintiff's counsel has spoken.  But before that, is there anything else you'd like to tell me now or is there anything you'd like to address in plaintiff's surreply?

MS. LAJEWSKI:  I believe plaintiff's surreply -- I just noticed that it said yes, UPS had brought up new arguments.

And it certainly didn't bring up new arguments.  It was responding to plaintiff's argument that because it did not meet the four corners of Rule 11, that therefore the motion was void, I think procedurally void.

14

And our response is no, the cases were citing showed that no, there is case law that shows that, you know, if you provide the notice and they have the information and they can make a reasonable decision, then you've complied sufficiently with the rule.

THE COURT:  Understood.  Yes.

MS. LAJEWSKI:  And you have all those cases, Your Honor.

THE COURT:  Yes.  Yes.  Thank you.

And now I have -- with the surreply, I have plaintiff's discussion of those cases too.  All right.

MR. BLACKBURN:  Good morning, again, Your Honor. Thank you for hosting us today.

And I apologize for my jeans. I spilled stuff on my pants that goes with my blazer  So these were from the dry cleaners. I just grabbed them and put them on so I don't come in here looking like a mess.

THE COURT:  Quite all right.

MR. BLACKBURN:  But I have a lot of respect for my opposing counsel here.  We've been going at it for some years now over these cases and I've grown very, very fond of her as a professional and personally, as a person as well.

But I would just say this.  I do not think that UPS has met the standard under Rule 11 at all.

Number one, the only time, as the court just

15

acknowledged, that a sanction was noted a sanction was noted in writing was on May 29th, 2025.  It was not  -- Rule 11 was not mentioned here at all.  No safe harbor warning was provided in here at all as.

And this was part of a settlement communication for another matter that had nothing to do with this case.  It also discusses essentially four cases in there, right?

So it discusses the class action before that was before Judge DeArcy Hall.  It also discusses another matter that was in state court.  It discusses another matter that was before Judge Merle in this court, which we did settle.  And it was literally just dropped into the middle paragraph in this email.

From my understanding of Rule 11, a Rule 11 sanctions warning is supposed to be provided under separate cover, a single separate email or notification, explaining the grounds or as to why you would like to impose sanctions, detailing the offending document, or the offending statement, or the offending whatever that must be stricken, changed or withdrawn and providing -- you know, providing notice of the 21 days safe harbor before actually filing the motion, right?  None of those things are done here.

THE COURT:  Let me stop you there --

MR. BLACKBURN:  Sure.

THE COURT:   -- because I think you're right.  I

16

think that UPS did not follow the letter of Rule 11(c)(2). There are two arguments I'd like you to respond to.

MR. BLACKBURN:  One is there is case law in the Second Circuit.

I'm thinking of *Perpetual Securities,* but I believe there are other cases as well, that suggest that if it can be shown that counsel would have taken the same actions even if the letter of Rule 11(c)(2) had been followed, and this is what your adversary is alluding to, that it's her position that you were never going to withdraw this case and, therefore, UPS is -- you know, I don't want to put words in her mouth, but I'll paraphrase.

The way I see it is the argument is that UPS's failure to comply with the safe harbor provision can be forgiven if it would be futile.  And if you would have done -- you would have pursued the same course of conduct anyway.

So that's one argument I want you to respond to.

The other is what do I do with the fact that Judge Amon specifically authorized this motion for sanctions?

MR. BLACKBURN:  Okay, so taking the first point that you raised.  Again, I was never served with a detailed outline of the sanctions, right?

So I never had the opportunity to truly like bring this to my client.  These are all separate cases, all separate plaintiffs, all separate, separate individuals, same

17

dependent. Okay?  Everyone has different --

THE COURT:  You say that they're separate.  You say that in your papers.  And, of course, that's true on some level.

But isn't it also true that the particular issue on the motion to dismiss is basically identical in all the cases?

MR. BLACKBURN:  Yes, but, Your Honor, I would just say this, right?

And I think, you know, Your Honor raised this earlier when you asked the defense, whether or not Judge Donnelly's opinion binds Judge Amon.  And it does not, right?

And the reason why I'm going to stress that point is that I've had multiple situations.  I can give you an example with Judge Wigenton in the District of New Jersey, Federal District Judge Susan Wigenton.  There was a look back window that New Jersey implemented sexual -- for sexual assault on children, right?  State law, not federal.

Cases were brought in federal court.  Judge Wigenton was the only judge that said that that law did not apply.  All of her colleagues said that it did.  Okay?

So now you have a conflict between decisions, between judges, different interpretations of the law, right?

What I was asking four in this case in particular was for Judge Amon, Judge Donnelly and the other judges to use their discretion, which I believe they are allowed to,

Fiore Reporting and Transcription Service, Inc.    203-732-6461

18

especially when it comes to the interests of justice and when it comes to a situation like this where the -- like Your Honor said there was nothing new filed in any of the complaints. The case had been going on for an extended period of time before Chief Judge Brody here.

It was dismissed based on no -- no federal jurisdiction.  It was refiled within the six months. We asked for waiver of service.  They were on notice of every claim in here.

And but for a very deceitful process server company doing what they did, they would have been served on time and we wouldn't actually be here.  And they -- missed service was about two to three days.

THE COURT:  Six days, I think.

MR. BLACKBURN:  Six days.  It was very, very, very minimal.  And as I explained in my papers, there are other judges in the state court and in federal court -- might not be under 205(a) but under -- I think it was 306 that used their discretion in the interests of justice and said listen, two days is not going to harm you. You're not really losing anything.

So when we had --

THE COURT:    There's also adverse authority in the Second Department, right?

MR. BLACKBURN:  And the First Department.  So you

19

have clashing opinions.

THE COURT:  No, I think they both go against you, the First and Second Department.

MR. BLACKBURN:  Okay.  Your Honor, I'm not going to --

THE COURT:  I'm just saying --

MR. BLACKBURN:  I don't know. I don't have it in front of me so yes, if you -- if that's what your research is showing I concede on that point.

But the issue is, you know, there was no -- the motion was fully briefed.  We actually fully briefed I think Judge Amon's motion before we did Judge Donnelly's motion.

Ironically, we had our motion conferences on the same day before Judge Donnelly and before Judge Amon.

And Judge Donnelly, in my opinion, was actually trying to find ways to say this and trying to find ways on the record to try to figure out, okay, well, you know, does the law of the case doctrine apply, you know, and was really like trying to dig and see because, I mean, on the face of this -- this is, you know, this is messed up what happens to these guys.

And you know, like you said, there was nothing in Judge Donnelly's opinion which would have forced Judge Amon to rule identical to her.

And the example that I gave in the Southern District

of New York, there was two different opinions on the Adult Survivors Act.  And you had one judge issue two opinions saying that it does not conflict -- no, the gender victim -- the GVMA does not conflict with the Adult Survivors Act.  And we had another judge in the same district down the hall that said, no, it does.

THE COURT:  I think what I hear you arguing is that you had a reasonable belief that the courts could exercise their discretion and extend the time.

MR. BLACKBURN: Yes.

THE COURT:  And that just because Judge Donnelly ruled one way doesn't mean that Judge Amon would necessarily rule the same way.  But can we go back to my earlier question?

If UPS had complied with the letter of Rule 11(c)(2) and, you know, after Judge Donnelly's decision, or even after Judge DeArcy Hall's decision, served you with what became its motion paper --

MR. BLACKBURN:  Yes.

THE COURT:  -- would you have withdrawn the complaint?

MR. BLACKBURN:  I would have advised my client to withdraw, yes.

THE COURT:  Sorry?

MR. BLACKBURN:  I would have advised my client that he would have had no choice but to withdraw at that point,

21

because he would have been -- he would have had a losing decision from Judge DeArcy Hall, because he was a part of that case under the class.

And he would have had an example from Judge Donnelly -- so it's like okay. Well, you already lost in this group action.

So your individual action you need to withdraw this as well, because more likely than not, you're probably going to lose here as well.

And if you don't do it within the next 21 days, then you will be faced with potential sanctions, which will included court costs, all the things --

THE COURT:  How do you respond to your adversary's argument that -- or rather representation that you told her that you couldn't withdraw it even with sanctions because it would prejudice your case against the process server?

MR. BLACKBURN:  So I don't -- I don't -- I never said that I cannot withdraw it even with sanctions.  I would not have said that because, one, who wants to be sanctioned and who's going to risk that.  I'm not going to having my client, who doesn't have any money, to have to pay all of these fees, or whatever it is that UPS is going to ask for. So no, I did not say that.

We did have a conversation and I did mention to her that I was in the process of suing the other -- the process

22

serving companies, and that I preferred to wait to have a final decision on the merits by the courts before, you know -- instead of just withdrawing it on my own.

At that point, no sanctions was mentioned to me. The only time I got -- the first notice of sanctions was in this email. And again, like I said before, it was like buried in the email.

THE COURT:  And you would have had a different conversation.  I don't want to put words in your mouth.

MR. BLACKBURN:  Yes, I would have a completely different conversation with my client --

THE COURT: If it had been a -- if it had been a motion.

MR. BLACKBURN:  If it had been properly done because now I know -- I mean, you know, in this business, a lot of people make a lot of threats all the time.

You know, like, I've gotten threatened by counsel, to do a whole bunch of different things, and nothing ever comes of it, right?

I mean, sometimes it's posturing and sometimes it's other things.  I'm not saying that, you know, that Ms. Lajewski, right? Am I saying that right?  Okay.  Was doing that, but, you know, I did not see any reason to withdraw any of these remaining actions.

And even in this email she doesn't mention Judge

Donnelly's opinion.  She talks about Judge DeArcy Hall.

THE COURT:  Well, I think that's right, because that's the one that had happened just before, right?

MR. BLACKBURN:  But then she also mentions -- the point is that she mentions four cases here but the one that she's relying on, the opinion that she's relying on, which is Judge Donnelly's, is not mentioned here at all.

THE COURT: So what do I do with the fact that Judge Amon specifically authorized --

MR. BLACKBURN:  Of course --

THE COURT:  -- UPS to file a motion for sanctions?

MR. BLACKBURN:  So UPS made the request to file a sanctions motion under Rule 11.

I'm assuming Judge Donnelly probably assumed that UPS has followed the proper procedures and requirements under Rule 11.

And, you know, I don't know what her thinking was, but that to me, I think would probably be the only assumption that I can come up with, is that she thought that UPS had gone through the proper procedures that's delineated under Rule 11 so --

THE COURT:  Sorry. I derailed your argument.  What else would you like me to know?

MR. BLACKBURN:   No, I think that's pretty much about it.  The basis for my argument is, and I think Your

24

Honor acknowledged it earlier, that two out of the three cases that UPS mentioned in their reply brief, no sanctions were granted.

And then the one case that sanctions was granted in there was a lot -- I think it was like a six page opinion and then the judge had an issue and then the judge had warned them and they had a court conference.

It was a lot happening in that case where the court felt satisfied that the judge's own actions, coupled with everything else that the opposing counsel, did put the attorney on great notice that the possibility of the case being dismissed was great, number one.

And number two the fact that they would be sanctioned if they did not move and do what they were supposed to do.

THE COURT:  Let me ask you about two things that are not in the record before me, but were mentioned and sort of affect the atmosphere.

One is this representation that you just filed another time barred action in New York State court.

MR. BLACKBURN:  So I could address that. It's not time barred.  What happened then in the case with Judge DeArcy Hall, it was dismissed without prejudice.

And if you look at the docket in that case -- now granted that's not before you but I'll just give you my

25

summation of what occurred in there.

There were several individuals who had timely actions still as of the date of when UPS is served and when case is filed, which would mean that January 28th, 2024 is when the case is filed.  Six years before that would be January 28th or 29th, I think, 2018.

So every employee who was still effectively employed at UPS at that time, from that time moving forward, would still have a cause of action.

The issue that I was having -- well, the issue in the class action case is that it was a limited -- it limited the scope of the class because of the timeliness and because of the fact that the process server did not serve on time under Rule 205(a) but it was still served on time under Rule 303 -- CPLR 363.

THE COURT:  That was the issue in this case.

MR. BLACKBURN:  Yes, but -- yes, but -- yes, exactly.  Same issue, but in the class cases is what I'm discussing.

So you asked about why I filed again. I filed based on the individuals whose claims are still active.  They still have a window of time where they can still come for -- come for their unpaid wages under the New York Labor Law, because it's a six year statute.

THE COURT:  So you're saying even if the court -

26

that that case is before the court -- presided -- so the judge presiding over that case, even if they took the same view as Judge DeArcy Hall and Judge Donnelly, you would still have viable claims, or --

MR. BLACKBURN:  It's still viable based on the math. I mean, you know, six years is six years, right?  If they were -- and some of these guys left their -- I don't have it in front of me, but some of these guys left their employment in 2020, you know what I'm saying?  So, like even if he filed it now, it would still be good, you know --

THE COURT:  I see.

MR. BLACKBURN:  -- for the first time, right?

So, you know, that's my opinion.  My opinion is that the four individuals -- because it's not the full eight or how much ever it was before -- the four -- the nucleus four still have valid claims and we are going to proceed with a class action based on those claims.

THE COURT:  All right.  And the other sort of atmospheric question I wanted to ask you is it came out in the recent papers that you had actually served a motion for sanctions on your adversary related to their motion for sanctions?

MR. BLACKBURN:  Yes, so I -- I actually filed a Rule 11.  And I did according to the rules, which was to send  -- I mean, she wasn't supposed to bring it before court because

it's not before the court.  You're supposed to wait 21 days before you present it to the court.

So I presented my arguments as you're required to do.  I presented the email.  I sent an email, gave the letter, gave the motion -- notice of motion. Gave the memorandum of law detailing why I think that this motion was filed in bad faith because, you know -- if she would have filed it under the court's inherent power, or she would have filed it under, you know, 19 -- I think it is 1987 or 1937.  I can't remember the exact year. But you know, those two different sanctions motions, fine.

But she didn't.  She filed it under Rule 11. And Rule 11 has specific rules that has to be followed.

And as the court acknowledged today, and I think as counsel may have reluctantly admitted to, they did not follow those steps.  So, therefore, the motion is improper and they should withdraw it within the 21 days allotted under Rule 11

THE COURT:  All right.  Well, that motion is not before me, obviously.

MR. BLACKBURN:  It's not and it wouldn't be.

THE COURT:  So I just want to -- I'll make one comment on it --

MR. BLACKBURN: Sure.

THE COURT:  -- which is that Judge Amon did specifically authorize UPS to file this motion.  And so I

28

would encourage you to think about that.

Is there anything else you would like me to know about this motion for sanctions?

MR. BLACKBURN:  No, other than the fact that it fails to comply with Rule 11 and the fact that the reply memo in further support of this case that are not applicable or analogous to this case, that's pretty much it.

THE COURT:  All right.  Thank you.  Just one moment.

MR. BLACKBURN:  No problem.

(Pause.)

THE COURT:   All right. Thank you, Mr. Blackburn.

Ms. Lajewski?  Ms. Lajewski, it's your motion.  You have the last word.

MS. LAJEWSKI:  Sure. I just want to point out a couple of things, Your Honor.

As to plaintiff's counsel's statement as he stands here today facing this motion for sanctions, that he would have drawn it if he had gotten a notice of motion,  I don't find that credible, with all due respect, Your Honor.

If I can read again from my notes from our March 17th phone call, he stated he would inform me that he would otherwise agree to my request.  And my request was that he withdraw these so that we would not have to serve a Rule 11 letter and motion with the court.

And he said his current position does not allow him

29

to withdraw the cases, that he needs the dismissals.  He explained that he had already filed a lawsuit against the process server for missing -- misleading him into believing the complaints were timely served.

He stated that his intention is to obtain monies for his clients from the process server that they otherwise would have been able to recover from UPS but for the process server's misrepresentations and fraud.

He stated that if he voluntarily withdraws the cases, then it will undermine his lawsuit with the process server, that he needs a court dismissal to show the damages and injury caused by the process server's conduct.

He also stated that even if UPS serves him with Rule 11 letters, since the motions in Moyle and Steele have already been briefed, there's really nothing left to do but appear for oral argument.

With all due respect, with those kind of details, I do not believe that had I sent notice of motion 21 days before this, before filing with the court, plaintiff suddenly would have withdrawn his case.

THE COURT:  So let me ask you a couple questions about that.

There is some authority, and I'm forgetting whether it's in the committee notes, or in one of the cases that was cited by the parties, to the effect that oral advocacy is

30

subject to less -- is going to be forgiven more than written advocacy because when you're thinking about sanctions, you think about how long the person had to think about it, whether they were speaking off the cuff.

I mean, isn't it possible that an oral conversation -- let's imagine that your notes are completely accurate, that an oral conversation between counsel doesn't land with the same effect as a written motion?

And what he's saying today is if he were presented with a written motion, he would have reconsidered his position.

MS. LAJEWSKI:  I haven't read the comments to know that, Your Honor.  I can say -- I can't argue that oral conversations have a different weight than documents. Absolutely right.

But in this case, the fact that we were told that it would be fruitless to send any documents and gave a detailed explanation why it would be fruitless, that because he was suing the process server -- which, by the way, he did file suit against the process server for fraud and misrepresentations, that without the dismissals by the judges, it would impact that case.  I believe in good faith UPS relied on it.  It said  why would it waste its time and money putting something together that we know is going to be ignored.

And I think, Your Honor, the case -- I'm pretty sure

31

you should have it, but I just want to cite to you, it's the *Star Mark Management*, right?

It specifically says the purpose of the provision is not to cause the party opposing frivolous filing to incur costs merely to have the filing withdrawn, but to give the opponent notice and an opportunity to consider withdrawing the filing without the court's involvement.

And that's what we were doing in these conversations.  And that, Your Honor, is what I was doing when I sent the letter to Judge Amon saying we're going to seek sanctions for this.

And in fact, when I filed the letter with Judge Amon on June 12th, that afternoon, she scheduled a conference, oral conference with counsel for the next morning to discuss this.

I appeared, Your Honor, and after 20 minutes plaintiff's counsel never showed. And so she closed out the conference.

And I actually, during that time, tried to email him to see if something had happened.  Never wrote to the judge, never got back. Nothing.

So he was given an opportunity to discuss this with the judge before she granted UPS the right to file this motion.

THE COURT:  Was there any discussion on the record of that conference?

32

MS. LAJEWSKI:  No, because his opposing counsel was not there.  The clerk had said to me the judge will not come out and talk to you until we get opposing counsel.

And then after 20 minutes, the clerk came back on and said, the judge has decided to close this out since you tried to reach opposing counsel and you can't seem to get him.

THE COURT:  Okay.  What is the significance, if any, of the fact that Mr. Blackburn doesn't appear to have done any legal work or made any new representations to the court after the decisions in the companion cases?

MS. LAJEWSKI:  Well, he certainly filed other documents in the other cases.  The *Moyle, et al.* case, correct, wasn't fully briefed.

And then we had oral arguments in the cases and he was arguing still his position in the oral argument.

THE COURT:   In this case. I mean --

MS. LAJEWSKI:  Oh, I'm sorry.

THE COURT:  No, I mean, the --

MS. LAJEWSKI:  Forgive me.

THE COURT:  I'm just -- the sanctions motion is about this case, right?

MS. LAJEWSKI:  Yes.

THE COURT:  And is it significant that although he didn't withdraw it, he also didn't make any new representations to the court, unless I have that wrong.

33

If he did -- if he did make new representations to the court, please direct me to them.

MS. LAJEWSKI: No, no. I think you're correct, Your Honor, because I think Judge Amon had scheduled oral argument, and then it was adjourned, and then she made a decision on the papers.

So you're correct. We did not end up having oral argument, unless I'm misspeaking. I don't think we had oral argument in this.

Yes, so you're right. You know, after filing of all this, there were no further misrepresentations, but they stood by the frivolous complaint instead of withdrawing them. And the point of the sanctions is to deter the kind of conduct like this going forward.

THE COURT: And what's your best authority -- and remind me, I think it may be cited in your papers, for the proposition that he had an affirmative duty to withdraw it?

MS. LAJEWSKI: Well, Your Honor, I'm don't have that case off the top of my head. Forgive me. And I'm sure it is in my papers.

THE COURT: While you're looking for it, Mr. Blackburn, do you think it's significant that you didn't make any new representations to the court during that time?

MR. BLACKBURN: Yes, of course, because I believe that the spirit of Rule 11, and I think all the other

34

sanctions and motions that defendants could have raised, is that the offending party has vectitiously [sic] multiplied the proceedings or brought, you know, claims or filed a bunch of letters, or did it -- just made a mess of the docket for the purpose of harassment or, you know, vexing the process and that did not happen here.

After this case was fully briefed on the motion nothing else was filed, except for -- until the letter in June that Ms. Lajewski just mentioned. So other than that, we filed nothing else.

You know, we were in the same position as we were when we opposed Donnelly, when we opposed -- sorry, Judge Donnelly -- when we opposed in Judge Merle's court. When we opposed in Judge DeArcy Hall's court.

I mean, the only case that actually we filed things on was in Judge DeArcy Hall's after the oral arguments, and that's because I went to Nicki Clair (ph), because it was a little unclear to me what the court's position was when she left the bench. She didn't say without prejudice, with prejudice. She just said the case is going to get dismissed.

So I just wanted to make it clear that no we had clear that no, we had individuals who still had valid claims because of the time frame that I just explained to you earlier.

And I think I filed, I think, three letters

35

explaining that on that docket and defense never responded to any of that, nor to any of the case law that I presented saying that the court had no authority to dismiss the case with prejudice because it would be jeopardizing valid New York Labor Law claims for at least four individuals, you know. So --

THE COURT: Okay. All right.

Ms. Lajewski, did you find it?

MS. LAJEWSKI: I did. It is the *Galin*, G-A-L-I-N, vs. *Hamada*, H-A-M-A-D-A, which is 283 F.Supp. 3d 189. It's a Southern District of New York case from 2017.

And the quote is, "To put another way, a party is not immune from sanctions merely because it has a reasonable belief or basis at the time it filed its initial pleading to believe that its claim was valid.

Instead a court may impose sanctions on a party for refusing to withdraw an allegation or claim even after it was shown to be inaccurate.

THE COURT: Okay. Thank you. Yes.

MR. BLACKBURN: Yes, Your Honor, I don't have that case in front of me so I can't really -- we have a counter to dispur [sic] that argument and to dispur [sic] that court's decision.

What I do know is that a lot of the opinions that were provided by the defense, it does have -- they do cite cases s

36

where the docket was full.

Where there were many conferences where there were extensive litigation going and back and forth and where counsel had ample opportunity, through warnings, suggestions from the courts from a opposing counsel in writing, multiple motions, multiple letters, multiple everything and still chose not to proceed and do the right thing, right?

I can give you another example. Recently in the Southern District of New York. I forgot the judge's name, but there was a case where an individual -- the defense never even filed a motion for sanctions, but the judge was just so irate by the plaintiff's counsel for failing to withdraw a case that she said you do not have grounds for and he didn't do it.

She sanctioned him under the court's inherent power for vectitiously [sic] multiplying the proceedings. All right?

That did not happen here. Like I said before, this was fully briefed. And we were just waiting to for Judge Amon to issue her opinion and or schedule oral argument. She didn't -- and that's pretty much it.

And like Your Honor referenced earlier, Judge Donnelly's opinion, Judge DeArcy Hall's opinion, and even the state court judge's opinions really have no impact on binding Judge Amon to do anything. She could have decided this in any way that she wanted, so --

37

THE COURT:  All right.  Is there anything else from either side?

MS. LAJEWSKI:  No, Your Honor.

MR. BLACKBURN:  Nothing -- nothing from me.

THE COURT:  All right. Then we're adjourned.

I think the next thing that will happen is you'll see my report and recommendation to Judge Amon, and you'll have, I believe it's 14 days to file your objections to Judge Amon.

MS. LAJEWSKI:  Thank you, Your Honor.

MR. BLACKBURN:  All right.

(Proceedings concluded at 12:13 p.m.)

I, CHRISTINE FIORE, court-approved transcriber and certified electronic reporter and transcriber, certify that the foregoing is a correct transcript from the official electronic sound recording of the proceedings in the above-entitled matter.

*Christine Fiore*

_____                    September 15, 2025

Christine Fiore, CERT

    Transcriber